**In Re James V. LACY, Jr., Debtor.**

**STATE OF OREGON, ex rel. Dave FROHNMAYER, Attorney General for the State of Oregon and Jane Edwards, Corporations Commissioner of the State of Oregon, Plaintiff,**

v.

**James V. LACY, Jr., Defendant.**

**Bankruptcy No. 386–02848–P7.
Adv. No. 86–0534.**

United States Bankruptcy Court,
D. Oregon.

March 31, 1987.

James J. McLaughlin, Salem, Or., for State.

Andrew P. Ositis, Salem, Or., for defendant.

## MEMORANDUM OPINION

ELIZABETH L. PERRIS, Bankruptcy Judge.

This matter arises upon the Defendant's motion to dismiss that portion of the Plaintiff's amended complaint to determine the dischargeability of a debt which is premised on § 523(a)(2).[1] The motion is based on two grounds: first, that the State lacks standing to bring this dischargeability claim; and second, that the complaint fails to allege fraud with the particularity required by Fed.R.Civ.P. 9.

The § 523(a)(2) claim is asserted by the State for the benefit of 101 unsecured investment creditors. There is no allegation in the complaint that the debts sought to be classified as nondischargeable in the § 523(a)(2) action are actually owed to the State. Rather, the State argues that it is authorized to assert these claims for the benefit of the individuals by provisions found in the Oregon Securities Law, ORS 59.005 et seq, and in the Oregon Racketeering Influenced and Corrupt Organizations Act, ORS 166.715 et seq.. The State argues that these statutes grant it authority to seek restitution for persons injured by unlawful conduct, and through its role as parens patriae it has standing to contest the dischargeability of the debts owed to the individuals.

The Defendant argues that § 523(c) only allows the creditor to whom the debt is owed to sue for a determination of nondischargeability, and that the State is not the creditor to whom these debts are owed. Thus, the Defendant argues, the State lacks standing to bring the § 523(a)(2) action for the benefit of the individuals. The Court agrees with the Defendant, and will dismiss those portions of the complaint which are based on the § 523(a)(2) claims of the investors.

**1.** All statutory citations are to the Bankruptcy Code, 11 U.S.C. § 101 et seq. (West Supp.1986)

## DISCUSSION

In order to challenge the dischargeability of a debt under section 523(a)(2), the "creditor to whom such debt is owed" must request the bankruptcy court to except the debt from discharge. § 523(c). A "creditor" is an entity that has a claim against the debtor or his estate. § 101(9). A "claim" is defined as meaning either a right to payment, or a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment. § 101(4). Thus, the Court must determine whether the State is a creditor eligible to object to the discharge of these debts.

In *In re Cannon*, 741 F.2d 1139 (8th Cir.1984), the Court of Appeals for the Eight Circuit addressed the issue raised in the case at bar. The *Cannon* court found that the State of Missouri lacked standing to bring a dischargeability complaint for certain debts owed to individuals as a result of a restitution order entered in state court. The Eight Circuit's ruling was based upon the fact that the restitution judgment, even though it was the result of a suit initiated by the state, was not enforceable by the state, but only by the individuals. The Missouri statute under which the state had brought the state court action did not explicitly grant the state the right to seek restitution for victims. It merely allowed the attorney general to sue, and the court to fashion a remedy which would make whole persons who suffered as a result of the illegal practice. 741 F.2d at 1141–42. The court concluded that the statute did not afford the state a right to payment as required under § 101(4) and § 101(12) to qualify as a creditor vis a vis the § 523(a)(2) claim.

The State seeks to distinguish the facts in this case from those in *Cannon* by distinguishing the statutes upon which it sues from the statute in *Cannon*. It argues that the result in *Cannon* was based entirely upon the fact that the Missouri statute did not give the state the right to seek restitution for individuals. While this

unless otherwise designated.

Court does not agree with the State's reading of *Cannon*, even if it did, the State's claim under ORICO would nevertheless fail under the State's analysis. ORICO, unlike the Oregon securities statute, does not contain a provision allowing the state to seek restitution for victims of illegal conduct. The provision cited by the State, ORS 166.-725(7)(c), merely provides that persons injured by violations of the statute shall have a right to forfeited property, or to the proceeds of forfeited property, superior to the rights of the state to that property. ORS 166.725(7)(c) controls the distribution of forfeited property, it does not grant to the state the power to collect restitution for the victims. Thus, even under the standard urged by the State, the State lacks standing to assert the victims' claims brought under ORICO.

This Court reads *Cannon* to hold that the state lacked standing because it was not empowered to enforce the restitution order. In other words, the state had no "right to payment" under § 101(4). Under the facts in *Cannon*, only the victims had that right. The *Cannon* court focused upon which party had the right to payment, not whether the state was empowered to sue for an order granting restitution. ORICO does not give the State the power to enforce restitution orders, indeed it does not explicitly provide for restitution. As discussed above, it merely contains a provision that injured persons shall have a right superior to that of the state in forfeited property. ORS 166.725(7)(c). The fact that injured individuals may reap a monetary benefit from an action by the state does not transform the state into the "creditor to whom such debt is owed."

The State's claim for restitution under Oregon securities law is also inadequate to allow the State standing to bring a dischargeability complaint. ORS 59.255(2)(a) allows the state to sue for restitution on behalf of the persons injured by the illegal act; but it goes on and states: "the court shall have jurisdiction to award appropriate relief *to such persons...*." (Emphasis added.) The statutory language indicates that it is the victims who have the right to be awarded the judgment, and it is the victims alone who can enforce such an order. This Court concludes that under ORS 59.255(2)(a), the State does not have the right to enforce a restitution order. Thus, the State does not have a right to payment and cannot bring a dischargeability complaint based upon the rights of the injured individuals.

The State's argument is based on the doctrine of *parens patriae*. "Parens patriae means literally 'parent of the country.'" *Alfred L. Snapp & Son, Inc. v. Pureto Rico*, 458 U.S. 592, 600, 102 S.Ct. 3260, 3265, 73 L.Ed.2d 995 (1981). In *In re Sclater*, 40 B.R. 594 (Bankr.E.D.Mich.1984), a case cited by the State, the court allowed the state to pursue dischargeability claims on behalf of many defrauded purchasers of health spa memberships. The court determined that the existance of a statute authorizing the Attorney General to protect the state's residents from fraudulent and deceptive practices of the type complainted of was sufficient to establish standing for the State in the nondischargeability proceeding. 40 B.R. at 597. The court apparently did not feel that it was necessary to determine whether the state qualified as a creditor under the definition in § 101(9).

This Court respectfully disagrees with the reasoning of the *Sclater* court. While the doctrine of *parens patriae* is available to confer standing upon a state in an action at common law, or in an instance where the class of plaintiffs is not clearly delineated by statute, it should not be used to avoid the explicit standing requirements of a statute. Section 523(c) states that actions under § 523(a)(2) may be brought by "the creditor to whom such debt is owed." Under the reasoning employed by the Eight Circuit in *Cannon*, and under the literal words of the statute, the State is not the creditor to whom the debt is owed. The individual creditors are the only parties with standing to bring the § 523(a)(2) claims.

Nor can the State gain standing by use of Bankruptcy Rule 2018. That rule does not apply in adversary proceedings, and even if it did, it is wholly inadequate to confer standing. The rule by its terms

deals with the issue of intervention. The cases cited by the State do not support the position that Bankruptcy Rule 2018 confers standing upon an Attorney General in an adversary proceeding. If the State wishes to intervene in any of the other pending adversary proceedings, it must seek an order allowing it to do so according to the appropriate standard found in Fed.R.Civ.P. 24 and Bankruptcy Rule 7024.

Defendant has also requested dismissal on the alternative basis that the complaint fails to meet the standard of Fed.R.Civ.P. 9 in alleging fraud. This point is mooted by the dismissal of the complaint for lack of standing. The only portions of the complaint which remain are those relating to the State's § 523(a)(7) claim, and Fed.R. Civ.P. 9 does not apply to the § 523(a)(7) claim because it is not based upon fraud.

## CONCLUSION

The claim for relief based on § 523(a)(2) is dismissed because the State lacks standing to bring it. This Memorandum Opinion shall constitute Findings of Fact and Conclusions of Law, and pursuant to Bankruptcy Rule 7052, they will not be separately stated. The attorney for the Defendant is ordered to submit an order granting the motion.