**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

SCOTT GREGORY HATTRUP,

    Plaintiff - Appellant,

v.

UNITED STATES OF AMERICA; JULIA
DENG, a/k/a Julia D. Palmer,

    Defendants - Appellees.

No. 20-3011
(D.C. No. 5:17-CV-04083-DDC)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **BACHARACH**, and **PHILLIPS**, Circuit Judges.
_____

Scott Gregory Hattrup appeals from the judgment entered following the district

court's dismissal all claims against the United States and its grant of summary

judgment in favor of Julia Deng. Exercising jurisdiction pursuant to 28 U.S.C.

§ 1291, we affirm.

_____

    [*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.    Background

Hattrup had several years of unpaid federal income tax liabilities.  In a previous action, the United States obtained district court approval for a judicial levy on property that Hattrup owned in Johnson County, Kansas (the "Property"), to collect on those liabilities.

In April 2016, the Internal Revenue Service ("IRS") provided Hattrup with a notice of seizure of the Property.  In August of that year, the IRS provided him with a notice of sale by public auction ("Notice of Sale").  The Notice of Sale listed October 6, 2016, as the scheduled public auction date.  It also identified the IRS's Property Appraisal & Liquidation Specialist ("PALS") for the scheduled sale and included a telephone number and address "for information about the sale."  R. at 110.  The Notice of Sale set forth Hattrup's statutory redemption rights both before and after the sale.  As to the latter, the Notice of Sale stated that Hattrup's right of redemption would run for 180 days after the sale and that the redemption price would be the amount paid at the sale plus interest at 20% per annum.

The public auction sale of the Property took place, as scheduled, on October 6, 2016.  Hattrup did not attend the sale.  Deng was the high bidder for the Property.  She paid the purchase price the same day and received from the PALS a certificate of sale and a letter indicating the sale would be finalized after expiration of the 180-day redemption period if the Property was not redeemed by that time.

The IRS provided no further notice regarding the sale of the Property to Hattrup. He did not communicate with the PALS or any other IRS employee regarding the Property or the sale during the redemption period.

In early May 2017, after the redemption period had expired, Deng surrendered the certificate of sale in exchange for a quitclaim deed. Deng recorded the quitclaim deed in Johnson County, Kansas, on May 15, 2017. She hand delivered to Hattrup a notice to quit the premises on May 17, 2017. Hattrup learned of the sale of the Property at that time. When he did not vacate the Property, Deng filed an eviction action in state court and received a judgment for possession in July 2017.

Hattrup filed this pro se action against the United States and Deng in September 2017. While conceding he had received the Notice of Sale, he alleged that the United States violated his right to due process under the Fifth and Fourteenth Amendments by failing to provide him an additional notice after the sale of the Property. Hattrup contended that the Notice of Sale was constitutionally insufficient because it did not include all of the information—specifically, the name and address of the purchaser and the purchase price—that was necessary for him to exercise his post-sale right to redeem. Hattrup sought (1) to enjoin enforcement of the quitclaim deed, (2) additional time to redeem the Property, and (3) to quiet title to the Property in his favor if he did redeem. Alternatively, he sought damages from the United States.

The district court granted the United States' motion to dismiss all of the claims against the government. As relevant to Hattrup's contentions on appeal,[1] the court held that the statutory waiver of sovereign immunity pursuant to 28 U.S.C. § 2410 did not apply in Hattrup's case. The district court also granted summary judgment in favor of Deng, concluding that the Notice of Sale provided Hattrup constitutionally sufficient notice.

## II. Discussion

On appeal, Hattrup argues the district court erred in holding the waiver of sovereign immunity in § 2410 was inapplicable in his case. Alternatively, he contends that a waiver of sovereign immunity is implied in tax sale cases. Hattrup further argues that the Notice of Sale was insufficient to satisfy due process with respect to his post-sale right to redeem.

We review de novo both the district court's dismissal of Hattrup's claims against the United States, *see Jones v. Needham*, 856 F.3d 1284, 1289 (10th Cir. 2017), and its grant of summary judgment in favor of Deng, *see Utah Republican Party v. Cox*, 892 F.3d 1066, 1076 (10th Cir. 2018). We liberally construe Hattrup's pro se arguments on appeal. *See Cummings v. Evans*, 161 F.3d 610, 613 (10th Cir. 1998).[2]

---

[1] Hattrup does not challenge on appeal several of the district court's bases for dismissing his claims against the United States.

[2] Hattrup was formerly a licensed attorney in Kansas. Although liberal construction does not apply to an attorney proceeding pro se, *see Smith v. Plati*,

### A. Dismissal of Claims Against the United States for Lack of Jurisdiction

The United States cannot be sued except in strict accordance with the terms of a specific waiver of sovereign immunity granted by Congress. *See Lane v. Pena*, 518 U.S. 187, 192 (1996) (holding that any waiver of "sovereign immunity must be unequivocally expressed in statutory text" and "will be strictly construed, in terms of its scope, in favor of the sovereign"). "The defense of sovereign immunity is jurisdictional in nature, depriving courts of subject-matter jurisdiction where applicable." *Normandy Apartments, Ltd. v. U.S. Dep't of Hous. & Urb. Dev.*, 554 F.3d 1290, 1295 (10th Cir. 2009).

Hattrup argues the United States waived sovereign immunity pursuant to § 2410, which provides, in relevant part:

> Under the conditions prescribed in this section . . . for the protection of the United States, the United States may be named a party in any civil action or suit in any district court . . . to quiet title to . . . real or personal *property on which the United States has or claims a mortgage or other lien.*

28 U.S.C. § 2410(a)(1) (emphasis added). "Section 2410(a) expressly authorizes quiet title actions affecting property on which the United States has a lien *only* '[u]nder the conditions prescribed in this section,'" including the pleading requirements in § 2410(b). *Dahn v. United States*, 127 F.3d 1249, 1251 (10th Cir. 1997) (quoting § 2410(a)). The district court held that § 2410 did not provide a waiver of sovereign immunity in this action for two reasons: (1) the United States

---

258 F.3d 1167, 1174 (10th Cir. 2001), the district court noted that Hattrup's license is inactive, *see* R. at 69 n.1.

5

did not have or claim a lien on the Property at the time Hattrup filed this action because its tax lien on the Property was extinguished upon the completion of the sale to Deng, and (2) Hattrup's complaint failed to comply with the mandatory technical pleading requirements of § 2410(b). Hattrup fails to demonstrate error in either of these rulings, but to affirm the dismissal of his claims against the United States we need only address the district court's first reason.

The waiver of sovereign immunity in § 2410 "must be narrowly construed." *Lonsdale v. United* States, 919 F.2d 1440, 1443 (10th Cir. 1990). In *Dahn*, 127 F.3d at 1251 (10th Cir. 1997), we affirmed a district court's denial of leave to amend the plaintiff's complaint to invoke the waiver of sovereign immunity in § 2410. In addition to the plaintiff's failure to satisfy the pleading requirements in § 2410(b), *see id.*, we noted that her proposed amended complaint did not object to an existing lien interest by the United States, but instead challenged collection efforts that had already resulted in the sale of her property, *see id.* at 1251 n.1. We held that "[a] quiet title claim [under § 2410], first made when any liens involved no longer existed, was barred ab initio." *Id.*; *see also Koehler v. United States*, 153 F.3d 263, 266-67 (5th Cir. 1998) (holding based on "the plain terms of the statute" that a "taxpayer may maintain a suit under § 2410(a) only if at the time she files suit the government had a mortgage or other lien on the property that is the basis of the taxpayer's quiet title action"); *Hughes v. United States*, 953 F.2d 531, 538 (9th Cir. 1992) ("[W]hile a taxpayer may contest the procedural validity of a tax lien under § 2410, he may do so only if, at the time the action is commenced, the government

6

still claims a lien or a mortgage on the property. If the government has sold the property prior to the filing of the suit, and no longer claims any interest in the property, § 2410 does not apply."). Thus, the district court did not err in holding it lacked jurisdiction over Hattrup's claims against the United States because the government neither had nor claimed a lien interest in the Property at the time he filed this action, as required for a waiver of sovereign immunity under § 2410.[3]

Hattrup nonetheless asserts that he should be able to pursue his claims against the United States under an implied waiver of sovereign immunity that he maintains is applicable in tax sale cases. But it is well settled that a waiver of sovereign

---

[3] Hattrup argues that other courts have held otherwise, but we are bound by the decision in *Dahn*, including its reasoning underlying the holding that the plaintiff's proposed amended complaint failed to invoke the waiver of sovereign immunity in § 2410. *See United States v. Meyers*, 200 F.3d 715, 720 (10th Cir. 2000) ("The precedent of prior panels which this court must follow includes not only the very narrow holdings of those prior cases, but also the reasoning underlying those holdings, particularly when such reasoning articulates a point of law."). Nor does Hattrup even attempt to distinguish our holding in *Dahn*. *See id.* (rejecting a party's attempt to distinguish this court's prior case law).

immunity "cannot be implied but must be unequivocally expressed." *United States v. Testan*, 424 U.S. 392, 399-400 (1976) (internal quotation marks omitted).

We affirm the district court's dismissal of Hattrup's claims against the United States for lack of jurisdiction because the government did not waive sovereign immunity.

**B.      Summary Judgment in Favor of Deng**

In granting summary judgment in favor of Deng, the district court held that the notice the IRS provided to Hattrup satisfied due process. The Internal Revenue Code requires that, after a seizure of property, a notice of sale must be provided to the property owner "specify[ing] the property to be sold, and the time, place, manner, and conditions of the sale thereof." 26 U.S.C. § 6335(b). Hattrup conceded that he received the Notice of Sale pursuant to § 6335(b). Although not required by statute, the Notice of Sale also informed Hattrup of his post-sale redemption rights pursuant to 26 U.S.C. § 6337(b) by quoting that section verbatim. *See* R. at 111. Hattrup contended this notice of his redemption rights did not satisfy due process because it was provided before the sale of the Property and did not include enough information—specifically, the name and address of the purchaser and the purchase price—to allow him to redeem the Property after the sale.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). But "due process, unlike some legal rules, is not a

8

technical conception with a fixed content unrelated to time, place and circumstances." *Id.* at 334 (brackets and internal quotation marks omitted). Rather, "due process is flexible and calls for such procedural protections as the particular situation demands." *Id.* (alteration and internal quotation marks omitted). Moreover, "the Due Process Clause has never been construed to require that the procedures used to guard against an erroneous deprivation of a protectible 'property' or 'liberty' interest be so comprehensive as to preclude any possibility of error." *Mackey v. Montrym*, 443 U.S. 1, 13 (1979). Thus, the determination whether due process is satisfied in a particular case "requires analysis of the governmental and private interests that are affected." *Mathews*, 424 U.S. at 334. To that end, the Supreme Court has directed courts to consider "three distinct factors":

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

More specifically, as it relates to Hattrup's contention on appeal, due process requires "notice [that is] reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *see also Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 (1983) (holding a mortgagee was "entitled to notice reasonably calculated to

9

apprise him of a pending tax sale"). Consequently, once "one is informed that the matter is pending," he "can choose for himself whether to appear or default, acquiesce or contest." *Mullane*, 339 U.S. at 314.

Considering the *Mathews* factors, the district court first held that the right of redemption is a significant property interest that is entitled to due process protection. Thus, the court concluded that the first factor favored Hattrup.

The court next considered the risk of an erroneous deprivation of Hattrup's property interest due to the notice the IRS provided. It noted that he received notice of his statutory post-sale redemption rights in advance of the sale, as well as the date and location of the sale and the PALS' contact information to answer any questions he had regarding the sale. Yet he neither attended the sale nor contacted the PALS to inquire whether the Property had been sold. The district court held that "due process does not require notice of every detail about every incremental step of the foreclosure process. Instead, it requires notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" R. at 234 (quoting *Mullane*, 339 U.S. at 314). The court concluded that the Notice of Sale—which was delivered to Hattrup before the 180-day right to redeem began—"was reasonably calculated under all the circumstances to apprise plaintiff both of the pending sale and commencement of his time-limited, post-sale redemptions rights." *Id.* at 235. Further, his choice "not to determine the status of the sale does not mean that the pre-sale [Notice of Sale] did not comport with due process." *Id.* at 236.

10

The district court next considered "the probable value of additional safeguards." *Id.* at 238. It concluded that a second, post-sale notice would not materially reduce the risk that Hattrup would be erroneously deprived of his redemption rights because he had already been notified that those rights were at risk and were expected to expire 180 days after the sale, and because the Notice of Sale provided enough information for Hattrup to take steps to redeem if he so chose. The court held that "[t]he value of an additional post-sale notice confirming the sale results does not nullify the conclusion that the initial notice informed plaintiff of his redemption rights. It was reasonably calculated to provide constitutionally adequate notice under the circumstances." *Id.* at 240. Thus, the court held that the second *Mathews* factor heavily favored the United States because the risk of erroneous deprivation was low where Hattrup received actual notice of the sale and his redemption rights but "simply failed to take any steps to preserve his rights." *Id.*

Finally, the district court briefly considered the third *Mathews* factor—the burden on the government of requiring a second, post-sale notice—and concluded it did not favor Hattrup. Having already found that the Notice of Sale satisfied constitutional due process requirements as to Hattrup's redemption interest, the court held that providing notice of his redemption rights in the Notice of Sale "conserves taxpayer resources and minimizes administrative burden by providing actual notice of the sale and the redemption rights together." *Id.* at 243.

Thus, after considering all of the *Mathews* factors, the district court held that Hattrup did not have a constitutional right to post-sale notice of his redemption rights

11

under the circumstances presented. It therefore granted summary judgment in favor of Deng on Hattrup's claims stemming from the alleged due process violation.

Hattrup argues that all three *Mathews* factors weigh in favor of requiring the government to provide an additional, post-sale notice providing the name and address of the purchaser and purchase price. He contends that due process requires such notice at a bare minimum, but he cites no authority for this proposition.[4] Hattrup also argues that the Notice of Sale was insufficient because it failed to state how he could obtain the information necessary for him to redeem after the sale. On the contrary, the Notice of Sale provided him two avenues to obtain that information: by attending the sale or by contacting the PALS. Hattrup contends the Notice of Sale improperly shifted to him the burden of obtaining that post-sale information. But due process requires only notice of the pending proceeding and an opportunity to act in response. And Hattrup received such notice via the Notice of Sale. Finally, Hattrup argues that a post-sale notice "could easily be prepared by the IRS staff while working on the other [post-sale] documents required." Aplt. Br. at 16-17. But he ignores the district court's other bases for concluding that the final *Mathews* factor weighed against him.

In sum, Hattrup received notice that the sale of the Property was pending. He chose not to attend the sale or otherwise exercise the opportunity to act in response to

---

[4]Although Hattrup cites one case in which taxpayers received a post-sale notice of redemption rights, he provides no authority holding that such notice is constitutionally required.

12

that notice. *See Mullane*, 339 U.S. at 314 (noting that, once informed, a person "can choose for himself whether to appear or default"). Hattrup fails to demonstrate error in the district court's holding that the Notice of Sale was sufficient to satisfy his right to due process. We therefore affirm the district court's grant of summary judgment in favor of Deng.

## III.    Conclusion

The district court's judgment is affirmed.

Entered for the Court


Gregory A. Phillips
Circuit Judge

13